UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHAEL DELEON,

             Petitioner,

     v.

CLARK DUCART, Warden,

             Respondent.

Case No. CV 14-9098-DMG (SP)

SECOND REPORT AND
RECOMMENDATION OF UNITED
STATES MAGISTRATE JUDGE
CONCERNING MERITS OF
HABEAS PETITION

This Second Report and Recommendation concerning the merits of the claims raised in this case is submitted to the Honorable Dolly M. Gee, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## **INTRODUCTION**

On November 25, 2014, petitioner Michael DeLeon filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition"). Petitioner challenges his 2010 convictions in the Los Angeles County Superior Court for murder in the

second degree and discharge of a firearm with gross negligence, and the resulting sentence of forty years to life in prison.

The Petition raises three grounds for relief: (1) petitioner's convictions relied on statements obtained in violation of *Miranda v. Arizona*, 384 U.S. 435, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); (2) trial counsel provided ineffective assistance during the hearing on whether petitioner's statements should be suppressed due to the claimed *Miranda* violation; and (3) petitioner's sentence violates the Eighth Amendment.[1]

The court previously considered petitioner's three claims in a Report and Recommendation issued on September 21, 2018 (the "R&R"), finding there was no *Miranda* violation, petitioner was not prejudiced by ineffective assistance of counsel because there was no *Miranda* violation, and petitioner's sentence did not violate the Eighth Amendment.  In an April 8, 2019 decision, the District Court accepted in part and rejected in part the R&R.  The District Court agreed there was no Eighth Amendment violation, but disagreed there was no *Miranda* violation. The District Court referred the matter back to this magistrate judge to reconsider whether petitioner is entitled to relief on Grounds One and Two in light of the determination that petitioner's statements were obtained in violation of *Miranda*. Since the District Court accepted the recommendation to deny relief on Ground Three, Ground Three will not be discussed in this Second Report and Recommendation.

As previously determined by the District Court, petitioner was in custody when interviewed by police and therefore a *Miranda* warning was required.  For the reasons discussed below, the *Miranda* violation had a substantial and injurious

---

[1]    Petitioner enumerates his claims differently in the Petition and in the Memorandum in Support of Petition.  The court refers to the claims as numbered in the Petition.

effect on the jury's verdict.  Additionally, petitioner's trial counsel unreasonably argued the wrong legal standard at the suppression hearing and the error prejudiced petitioner.  It is therefore recommended that the Petition be granted.

## II.

## STATEMENT OF FACTS[2]

On June 15, 2007, petitioner – who was sixteen years old at the time – approached a party along with Jesse Silva, Marco Flores, and Jovani Leiva.  Lodged Doc. O at 2.  Upon arrival at the front gate of the party, the boys were searched and the person conducting the search discovered that Flores had a gun.  *Id.* at 2-3.  An altercation ensued and Flores handed the gun to petitioner, who fired two to five shots into the air.  *Id.* at 3.  Silva then obtained the gun from petitioner and shot three or five shots into the crowd, fatally wounding Albert Molina.  *Id.* at 3-4.  Petitioner's group fled.  *Id.*

Almost one year later, on June 9, 2008, the police executed a search warrant at petitioner's home, during which his mother was present.  *Id.* at 7.  Detective Jose Martinez told petitioner's mother that: (1) he had a warrant for petitioner's arrest; (2) officers were looking for petitioner; (3) if petitioner came home she had to bring him in; and (4) "bad things would happen" if petitioner resisted arrest.  Lodged Doc. O at 7; Memorandum in Support of Petition ("Pet. Mem."), Ex. C.  That same day, petitioner's mother conveyed this information to petitioner and drove him to the police station, where Martinez interviewed petitioner.  Lodged Doc. O at 4; Pet. Mem., Ex. C.

Martinez did not advise petitioner of his rights pursuant to *Miranda* prior to or during the approximately 110-minute interview.  Lodged Doc. O at 8.

---

[2]   Except where otherwise indicated, the following facts are drawn from the California Court of Appeal's decisions on direct appeal.  *See* Lodged Docs. F, O.  Such statements of facts are presumed correct.  28 U.S.C. § 2254(e)(1).

1    Notwithstanding the fact that there was a warrant for petitioner's arrest, Martinez

2    informed petitioner that he was not under arrest and was free to leave. *Id.* at 7-8.

3    Petitioner's mother was present during the interview and was also questioned by

4    Martinez. *Id.* at 8.  Prior to Martinez questioning her son, petitioner's mother asked

5    Martinez what petitioner was being charged with, to which Martinez did not

6    directly respond.  Pet. Mem., Ex. D at 77 (transcript of June 9, 2008 interrogation).

7    After speaking with petitioner's mother, Martinez questioned petitioner about the

8    Molina murder. *Id.* at 103-191.  Martinez confronted petitioner with the allegation

9    that petitioner shot Molina. *Id.* at 112, 124-25, 127.  Petitioner stated that he did not

10   shoot anyone and that he "shot two in the air" because he saw "people coming

11   towards [him]." *Id*. at 131-32.  He further stated that Silva shot into the crowd for

12   "no reason." *Id.* at 132.  At the conclusion of the interrogation, petitioner was

13   arrested and read a *Miranda* warning.  Lodged Doc. O at 8.

14        During pretrial proceedings, petitioner moved to exclude his statements to

15   Martinez on the grounds that his statements were obtained in violation of *Miranda*.

16   *Id.* at 7.  At the hearing on the motion, the parties disputed whether petitioner was in

17   custody for purposes of *Miranda*. *Id.*  The only witness at the hearing was

18   Martinez, who testified that he executed a search warrant on petitioner's home and

19   that he told petitioner's mother he was investigating petitioner in relation to a

20   murder and that he had an arrest warrant for petitioner. *Id.*; Pet. Mem., Ex. G.

21   During cross-examination, Martinez testified that he would have let petitioner leave

22   the station during the interview, even though he had a warrant for his arrest. *Id.* at

23   7-8.  Trial counsel asked Martinez whether he intended to take petitioner into

24   custody for the Molina murder, to which Martinez responded "[a]t that point, no."

25   *Id.* at 7.  Petitioner's trial counsel argued that based on Martinez's conversations

26   with the co-defendants, his obtaining a search warrant for petitioner's house, and

27   his obtaining an arrest warrant for petitioner, petitioner was a suspect and was going

28

1  to be arrested.  As such, counsel argued, he should have been read his *Miranda*

2  rights.  *Id.* at 8-9.  The trial court stated, "State of the law after *Berkemer* [*v.*

3  *McCarty*, 468 U.S. 420, 439-40, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984)] . . .

4  would be that it would require more than what was within the police officer's

5  mind."  *Id.* at 9.  The court denied petitioner's motion to exclude his statement.  *Id.*

6  ### III.

7  ### PROCEEDINGS

8  **A.**   **State Court Proceedings**

9  On June 8, 2010, following a trial, a jury found petitioner guilty of one count

10  of murder in the second degree (Cal. Penal Code § 187(a)) and one count of

11  discharging a firearm with gross negligence (Cal. Penal Code § 246.3(a)), as well as

12  gang and firearm enhancements (Cal. Penal Code §§ 12022.53(b)(e),

13  12022.53(c)(e), 12022.53(d)(e), 186.22(b)(1)).[3]  Lodged Docs. A, B.  The trial court

14  sentenced petitioner to fifteen years to life for the murder and twenty-five years to

15  life on one of the enhancements for a total of forty years to life in prison.  Lodged

16  Doc. B.

17  Petitioner, represented by counsel, appealed the judgment.  Lodged Doc. C.

18  Petitioner raised six arguments: (1) his statement was obtained in violation of

19  *Miranda*; (2) the trial court erred by permitting the prosecution to ask leading

20  questions to its main witness, Leiva; (3) prosecutorial misconduct; (4) the

21  prosecution posed an improper hypothetical to the gang expert witness; (5)

22  cumulative error; and (6) his sentence violated the Eighth Amendment.  *Id.*  On

23  August 20, 2012, the California Court of Appeal, in a reasoned decision, affirmed

24  the judgment.  Lodged Doc. F.

25  Petitioner subsequently filed a petition for rehearing as to the *Miranda* and

26

27  [3]   The Abstract of Judgment incorrectly shows the date of conviction as being

28  what was in fact the sentencing date.  *Compare* Lodged Docs. A, B.

Eighth Amendment claims.  Lodged Doc. G.  The Court of Appeal granted rehearing on September 19, 2012, and ordered the parties to file supplemental briefing addressing whether petitioner's sentence of forty years to life constituted cruel and unusual punishment in light of the fact that petitioner was a minor when he committed the crime.  Lodged Docs. H-I.  On March 4, 2013, the California Court of Appeal filed a second opinion affirming the judgment.  Lodged Doc. O. Petitioner then filed a petition for review in the California Supreme Court raising various issues related to his *Miranda* claim, an ineffective assistance of counsel claim for failure to object to prosecutorial misconduct, and his Eighth Amendment claim.  Lodged Doc. P.  The California Supreme Court summarily denied the petition for review on June 12, 2013.  Lodged Doc. Q.  Thereafter, petitioner filed a petition for writ of certiorari in the United States Supreme Court, which was denied on November 4, 2013.  Lodged Doc. R.

Meanwhile, petitioner filed a habeas petition in the Superior Court, raising a claim of ineffective assistance of counsel at the *Miranda* hearing.  Lodged Doc. T, Ex. H. On May 15, 2013, the Superior Court denied the habeas petition on the ground that plaintiff failed to show a prima facie case for relief.  *Id*., Ex. I.

On May 22, 2013, petitioner filed a habeas petition in the Court of Appeal, raising the same ineffective assistance of counsel claim.  Lodged Doc. S.  The Court of Appeal summarily denied the habeas petition on June 5, 2013.  Lodged Doc. U.

Petitioner filed a habeas petition in the California Supreme Court on June 10, 2013, presenting the same ineffective assistance of counsel claim raised below. Lodged Doc. V.   In response to an order by the California Supreme Court, respondent filed an informal response to the habeas petition on September 12, 2013, to which petitioner filed a reply.  Lodged Docs. W-X.  The California Supreme Court denied the habeas petition without comment on November 26, 2013.  Lodged Doc. Y.

**B.**     <u>**Federal Court Proceedings**</u>

Petitioner filed the instant federal habeas Petition on November 25, 2014, raising three grounds for relief: (1) petitioner's statement was obtained in violation of *Miranda*; (2) ineffective assistance of counsel during the *Miranda* hearing; and (3) the sentence violated petitioner's Eighth Amendment rights.  Petition at 5-6; Pet. Mem. at 8-25.  Respondent filed a Motion to Dismiss, arguing that the Petition was mixed with both exhausted and unexhausted claims, and in particular that certain subclaims in Ground Two were unexhausted.  This court recommended that respondent's Motion to Dismiss be denied, which the District Court accepted and ordered on September 17, 2015.

The parties then briefed the merits of the claims in the Petition.  On September 21, 2018, the court issued the R&R recommending the Petition be denied based on the findings that (1) no *Miranda* warning was required because petitioner was not in custody when interviewed by the police, (2) petitioner was consequently not prejudiced by counsel's error during the suppression hearing, and (3) there was no Eighth Amendment violation.  Petitioner filed Objections to the R&R.  On April 8, 2019, upon review of the R&R, the Objections, and the record, the District Court determined petitioner was in custody during the police interview. The District Court accordingly rejected the R&R in part, accepted this court's recommended denial of the Eighth Amendment claim, and referred the matter back to this magistrate judge for reconsideration of Grounds One and Two.

**IV.**

**<u>STANDARD OF REVIEW</u>**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  AEDPA provides that federal habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim –

1       (1) resulted in a decision that was contrary to, or involved an unreasonable

2  application of, clearly established Federal law, as determined by the Supreme Court

3  of the United States; or

4       (2) resulted in a decision that was based on an unreasonable determination of

5  the facts in light of the evidence presented in the State court proceeding." 28

6  U.S.C. § 2254(d)(1)-(2) (emphasis added).

7       In assessing whether a state court "unreasonably applied" Supreme Court law

8  or "unreasonably determined" the facts, the federal court generally looks to the last

9  reasoned state court decision as the basis for the state court's justification. *Wilson*

10  *v. Sellers*, __ U.S. __, 138 S. Ct. 1188, 1192, 200 L. Ed. 2d 530 (2018) ("the federal

11  court should 'look through' the unexplained decision to the last related state-court

12  decision" and "presume that the unexplained decision adopted the same

13  reasoning").  But the presumption that an unexplained decision adopted the same

14  reasoning as the last reasoned decision may be rebutted "by showing that the

15  unexplained affirmance relied or most likely did rely on different grounds than the

16  lower state court's decision. . . ." *Id.*

17       Here, there is no basis to find the California Supreme Court's unexplained

18  denials of review relied on different grounds than the reasoned lower court

19  decisions.  Accordingly, this court will look to the California Court of Appeal's

20  opinion on March 4, 2013, which stands as the last reasoned decision on Ground

21  One, and to the Superior Court's decision of May 15, 2013, which stands as the last

22  reasoned decision on Ground Two.

23  //

24  //

25

26

27

28

8

1

## V.

## DISCUSSION

**A.    Petitioner Is Entitled to Relief on His *Miranda* Violation Claim**

In Ground One, petitioner contends the police violated his constitutional rights when Detective Martinez questioned him while in custody without reading him his *Miranda* rights, and the statements Detective Martinez obtained should not have been admitted against petitioner.  Petition at 5; Pet. Mem. at 18-23.  On appeal, the California Court of Appeal upheld the trial court's implicit finding that petitioner was not in custody when he was questioned.  Lodged Doc. O at 9-11. Petitioner argues that under the totality of the circumstances, he was in custody at the time of the interview.

"Any police interview of an individual suspected of a crime has 'coercive aspects to it.'" *J.D.B. v. North Carolina*, 564 U.S. 261, 268, 131 S. Ct. 2394, 180 L. Ed. 2d 310 (2011) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977)).  Recognizing the "inherently coercive nature of custodial interrogation," the United States Supreme Court "adopted a set of prophylactic measures designed to safeguard the constitutional guarantee against self-incrimination."  *Id*. at 269.  It is now well established that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."  *Miranda*, 384 U.S. at 444.  These "procedural safeguards" require that a person in custody:

be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* at 479.  Once *Miranda* warnings have been given, if a suspect makes a clear and unambiguous statement invoking his constitutional rights, "all questioning must cease."  *Smith v. Illinois*, 469 U.S. 91, 98, 105 S. Ct. 490, 83 L. Ed. 2d 488 (1984).

### 1. __Petitioner Was In Custody and Therefore His Statements Were Obtained in Violation of *Miranda*__

The court conducts an objective inquiry to determine whether an individual was "in custody" when questioned by the police.  "In determining whether a person is in custody . . . , the initial step is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave."  *Howes v. Fields*, 565 U.S. 499, 509, 132 S. Ct. 1181, 182 L. Ed. 2d 17 (2012) (internal quotation marks and citations omitted).  "'This inquiry requires a court to examine the totality of the circumstances from the perspective of a reasonable person in the suspect's position.'"  *U.S. v. IMM*, 747 F.3d 754, 765 (9th Cir. 2014) (quoting *U.S. v. Crawford*, 372 F.3d 1048, 1059 (9th Cir. 2004)).  The Ninth Circuit has identified a non-exhaustive list of five factors relevant to the inquiry: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual."  *U.S. v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002) (quotations and citations omitted).

In 2011, the Supreme Court held that when the custody analysis involves juveniles, age is also a relevant factor.  *J.D.B.*, 564 U.S. at 261.  Recognizing that children are generally less mature and responsible than adults; lack experience, perspective, and judgment; and are more vulnerable to outside pressures than adults, the Supreme Court held that "[s]o long as the child's age was known to the officer at the time of the interview, or would have been objectively apparent to a reasonable officer, its inclusion in the custody analysis is consistent with the

objective nature of that test." *Id.* at 272, 277.  This court previously determined in the R&R, and the District Court agreed, the California Court of Appeal failed to consider petitioner's age in its custody analysis as required by clearly established federal law, and therefore this court must conduct a de novo review of the *Miranda* violation claim.

In its April 8, 2019 Order, the District Court determined that under the totality of the circumstances petitioner had a reasonable belief he was in custody during the police interview.  Although there were factors against an in custody finding – Detective Martinez advised petitioner he not under arrest and free to leave, petitioner was not restrained, Detective Martinez spoke with petitioner's mother for a significant portion of the time petitioner was at the police station, and petitioner's mother was present during the interview – they were outweighed by other factors supporting an in custody finding.  Those other factors included petitioner's knowledge that Detective Martinez already had an arrest warrant and told his mother that "bad things" would happen if petitioner resisted arrest, that the police already executed a search warrant on his house, that petitioner's mother brought him to the station as opposed to him voluntarily going on his own volition, and that Detective Martinez confronted petitioner with evidence of his guilt during the interview.  Most important of these factors was petitioner's awareness that Detective Martinez had a warrant to arrest him.  *See U.S. v. Slaight*, 620 F.3d 816, 819-20 (7th Cir. 2010) ("The police repeatedly told [the defendant] that he was free to leave . . . .  Since [the defendant] knew he'd violated federal law, he could not have believed they would have let him go rather than arrest him if he tried to leave; they had the goods on him.  Anyone in his situation would have thought himself in custody."); *see also U.S. v. Craighead*, 539 F.3d 1073, 1088 (9th Cir. 2008) ("The mere recitation of the statement that the suspect is free to leave or terminate the interview, however, does not render an interrogation non-custodial *per se*.").

1    Because petitioner was in custody during the police interview, Detective
2    Martinez violated petitioner's constitutional rights by failing to properly give
3    petitioner his *Miranda* warnings.  Petitioner's statements therefore should not have
4    been admitted at trial.  *See U.S. v. Gomez*, 725 F.3d 1121, 1125-26 (9th Cir. 2013)
5    ("Statements obtained in violation of *Miranda* generally are inadmissible in the
6    government's case-in-chief.") (quoting *New York v. Harris*, 495 U.S. 14, 20, 110 S.
7    Ct. 1640, 109 L. Ed. 2d 13 (1990)); *Pollard v. Garza*, 290 F.3d 1030, 1033 (9th Cir.
8    2002) (statements taken in violation of *Miranda* are excluded from a prosecutor's
9    case-in-chief).

10       **2.     Admission of the Statements Was Not Harmless Error**

11    Respondent contends that even if petitioner's *Miranda* rights were violated,
12    any error in admitting his interview statements was harmless.  Answer at 24-25; *see*
13    *Mays v. Clark*, 807 F.3d 968, 979-80 (9th Cir. 2015) (writ will be granted only if
14    *Miranda* violation was not harmless); *U.S. v. Henly*, 984 F.2d 1040, 1044 (9th Cir.
15    1993) (conviction sustained only "if admission of the un-*Mirandized* statements
16    constituted harmless error") (quotations and citation omitted).  "[A]n error is
17    harmless on collateral review unless it results in 'actual prejudice.'" *Mays*, 807 F.3d
18    at 980 (applying harmless error test under *Brecht v. Abrahamson*, 507 U.S. 619,
19    637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)).  In other words, the error must
20    have had a substantial and injurious effect or influence in determining the jury's
21    verdict.  *Davis v. Ayala*, __ U.S. __, 135 S. Ct. 2187, 2197-98, 192 L. Ed. 2d 323
22    (2015); *Brecht*, 507 U.S. at 637-38.

23    At trial, other than petitioner's own statements, the only evidence connecting
24    petitioner to the shooting was Jovani Leiva's testimony.  *See* Lodged Doc. DD
25    (Reporter's Transcript ("RT")) at 917-39.  But in California, a "conviction cannot
26    be had upon the testimony of an accomplice unless it be corroborated by such other
27    evidence as shall tend to connect the defendant with the commission of the
28

offense." Cal. Penal Code § 1111; *accord People v. Williams*, 16 Cal. 4th 635, 679, 66 Cal. Rptr. 2d 573, 941 P.2d 752 (1997); *see Laboa v. Calderon*, 224 F.3d 972, 979 (9th Cir. 2000). The jury was instructed that if Leiva was an accomplice to the crime, it could not convict petitioner on Leiva's testimony alone. Lodged Doc. Z at 431-32.

An accomplice is "one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." Cal. Penal Code § 1111; *see People v. Guiuan*, 18 Cal. 4th 558, 571, 76 Cal. Rptr. 2d 239, 957 P.2d 928 (1998). Although whether a witness is an accomplice is a question of fact for the jury, here, the prosecutor admitted the facts demonstrated Leiva was an accomplice. During her closing statement, the prosecutor emphatically stated that Leiva was an accessory to the crime and equally liable as an aider and abettor. RT at 2117-18 ("There's no ifs[,] ands or buts about it."). Respondent here does not concede Leiva was an accomplice (*see* Answer at 25 ("Assuming Leiva was an accomplice . . . ")); however, respondent does not actually argue or identify any evidence suggesting the prosecutor incorrectly identified Leiva as an accomplice. As the prosecutor admitted, Leiva understood gang culture, drove petitioner and his friends to the party, and attempted to enter the party with them. *See* RT at 2117-18. Leiva also drove the getaway car after the shooting. *See id.* at 938-39; *see also People v. Martinez*, 132 Cal. App.3d 119, 131-32, 183 Cal. Rptr. 256 (1982) (witness was an accomplice because he drove the getaway car to and from the scene of the crime). Given that there is no dispute as to the facts or the inferences to be drawn from them, Leiva was an accomplice and the prosecutor needed to present evidence corroborating his testimony. *See People v. Fauber*, 2 Cal. 4th 792, 834, 9 Cal. Rptr. 2d 24, 831 P.2d 249 (1992) ("Whether a person is an accomplice is a question of fact for the jury unless there is no dispute as to either the facts or the inferences to be drawn therefrom.").

Respondent contends corroborating evidence needs only to be slight and the prosecutor presented sufficient evidence to corroborate Leiva's testimony.  Answer at 25.  Respondent argues that although David Delgado did not identify petitioner at trial, his testimony corroborated Leiva's testimony because he identified Silva and "largely confirmed the events to which Leiva testified."  *Id*.  But contrary to respondent's argument, Delgado's testimony did not corroborate Leiva's testimony with respect to petitioner's participation.

Although respondent correctly asserts that corroborating evidence may be slight, the evidence "must tend to implicate the defendant and therefore must relate to some act or fact which is an element of the crime." *People v. Zapien*, 4 Cal. 4th 929, 982, 17 Cal. Rptr. 2d 122, 846 P.2d 704 (1993) (internal quotations and citation omitted); *see People v. Williams*, 43 Cal. 4th 584, 636, 75 Cal. Rptr. 3d 691, 181 P.3d 1035 (2008) ("Corroborating evidence may be slight, may be entirely circumstantial, and need not be sufficient to establish every element of the charged offense.").  Delgado's testimony only corroborated the portion of Leiva's testimony concerning the circumstances of the crime – that a group of males tried to attend the party, a gun was pulled out, the gun was shot in the air and at the crowd, and Silva made the fatal shot.  In contrast to Leiva, who testified petitioner shot the gun in the air and then handed the gun to Silva, Delgado testified that Silva was the only shooter.  *See* RT at 935-36, 1230, 1258-59.  Leiva and Delgado also provided conflicting testimony concerning the number of people in the group.  *See id*. at 920, 1225.  Delgado did not identify petitioner as present at the shooting or connect him to the shooting in any way.  *See id*. at 1224-31, 1266.

Because Delgado did not connect petitioner to the shooting, Delgado's testimony was insufficient to corroborate Leiva's testimony concerning petitioner. *See Martinez*, 132 Cal. App. 3d at 133 (because officers could only corroborate the circumstances of the offense and could not identify defendant, there was

insufficient evidence to corroborate the accomplice's testimony identifying defendant).  Without petitioner's own statements, no one but Leiva placed petitioner at the scene or otherwise corroborated Leiva's testimony so as to "connect [petitioner] with the commission of the offense" as required under California Penal Code § 1111.

Notwithstanding the fact that petitioner can establish that, without his statements, there would be insufficient evidence to convict him under California law, that is not the applicable harmless error standard.  Here, the proper question is "whether the error influenced the jury." *Arnold v. Runnels*, 421 F.3d 859, 869 (9th Cir. 2005).  Given that Leiva's credibility was called into question by petitioner's counsel for conflicting statements he provided to the police (*see* RT at 966-70), and given that the jury was instructed California law does not allow for a conviction based on the uncorroborated testimony of an accomplice, the fact that Leiva's identification of petitioner as present at the shooting was uncorroborated would have had a substantial and injurious influence on the jury's verdict.  *See Jackson v. Giurbino*, 364 F.3d 1002, 1010-11 (9th Cir. 2004) (admission of confession was not harmless because there was no evidence corroborating potential accomplice's testimony that defendant was present at the crime scene).

Consequently, the *Miranda* violation was not harmless error.  Without petitioner's statements, the only evidence implicating petitioner was the uncorroborated testimony of an accomplice and California law does not permit conviction based on uncorroborated accomplice testimony.  Petitioner is therefore entitled to habeas relief on Ground One.

**B.**   **Petitioner Is Also Entitled to Relief on His Ineffective Assistance of Counsel Claim**

In Ground Two, petitioner contends his trial counsel rendered ineffective assistance.  Petition at 5; Pet. Mem. at 8-18.  Specifically, petitioner argues that his

1   counsel's performance was deficient because she failed to argue the correct legal

2   standard at the suppression hearing, and also failed to investigate and present

3   evidence to support suppression under that standard.  He contends that had she

4   argued the correct standard supported by relevant evidence, his statements would

5   have been excluded.

6        The Sixth Amendment guarantees a right to effective assistance of counsel.

7   *See Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674

8   (1984).  To establish an ineffective assistance of counsel claim, a petitioner must

9   establish:  (1) counsel's performance fell below an "objective standard of

10  reasonableness" under prevailing professional norms; and (2) the deficient

11  performance prejudiced the defense.  *Id.* at 687-88.  "The inquiry under *Strickland*

12  is highly deferential and 'every effort [must] be made to eliminate the distorting

13  effects of hindsight, to reconstruct the circumstances of counsel's challenged

14  conduct, and to evaluate the conduct from counsel's perspective at the time.'"

15  *Greenway v. Schriro,* 653 F.3d 790, 802 (9th Cir. 2011) (quoting *Strickland*, 466

16  U.S. at 689); *see also Earp v. Cullen*, 623 F.3d 1065, 1074 (9th Cir. 2010).

17       Regarding the first prong, there is a "strong presumption that counsel's

18  conduct falls within the wide range of reasonable professional assistance."

19  *Strickland*, 466 U.S. at 689.  As for the second prong, a petitioner must show that

20  there is a reasonable probability that but for counsel's unprofessional errors, the

21  result would have been different.  *Id.* at 694; *Towery v. Schriro*, 641 F.3d 300, 315

22  (9th Cir. 2010).  "'A reasonable probability is a probability sufficient to undermine

23  confidence in the outcome.'"  *Williams v. Taylor*, 529 U.S. 362, 391, 120 S. Ct.

24  1495, 146 L. Ed. 2d 389 (2000) (quoting *Strickland*, 466 U.S. at 694).  The focus of

25  the prejudice inquiry is "whether counsel's deficient performance renders the result

26  of the trial unreliable or the proceeding fundamentally unfair."  *Lockhart v.*

27  *Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993).

28

1    As discussed in the court's prior R&R, petitioner's trial counsel's

2 performance was deficient.

3       **1.    Counsel Demonstrated Ignorance of the Law**

4    Petitioner's counsel, Evelyn Burns, made a motion to suppress petitioner's

5 statement to the police, and the trial court held a hearing on the motion.[4]  Burns did

6 not call any witnesses.  *See* Pet. Mem., Ex. G.  The prosecution presented the

7 testimony of Detective Martinez, and Burns cross-examined him.  *See id*.  During

8 the cross-examination, Burns elicited testimony that Detective Martinez had

9 obtained an arrest warrant for petitioner, had told petitioner's mother about the

10 arrest warrant, and did not intend to arrest petitioner when he came to the station.

11 *Id*. at 245-47.  Burns then argued to the trial court that petitioner's statement should

12 be suppressed because the arrest warrant indicated that petitioner was a suspect and

13 Detective Martinez intended to arrest him.  *Id*. at 251.  The trial court denied the

14 motion on grounds that the law required more than a police officer's intent to find

15 that petitioner was in custody for *Miranda* purposes.

16    As discussed above, whether a person is in custody for *Miranda* purposes is

17 an objective inquiry.  "A policeman's unarticulated plan has no bearing on the

18 question whether a suspect was 'in custody' at a particular time."  *Berkemer*, 468,

19 U.S. at 442.  Nor is the suspect's personal belief relevant.  "[T]he only relevant

20 inquiry is how a reasonable [person] in the suspect's position would have

21 understood his [or her] situation."  *Id*.

22    At the first step, petitioner's counsel's argument in support of a critical

23 motion to suppress was deficient, and unreasonably so.  In arguing that the trial

24 court should exclude petitioner's statement because Detective Martinez intended to

25 arrest petitioner, Burns asserted an incorrect legal theory.  This was not simply a

26 strategic choice.  "An attorneys' ignorance of a point of law that is fundamental to

27 ────────────────────

28    [4]   It is unclear whether counsel filed a written motion to suppress.

                                    17

his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*."   *Hinton v. Alabama*, 571 U.S. 263, 274, 134 S. Ct. 1081, 188 L. Ed. 2d 1 (2014) (citations omitted).   Burns, an experienced defense attorney, should have known the correct inquiry was an objective one – whether a reasonable person would have felt that he could not leave – which has been black letter law for over thirty years.   And even if Burns did not know the correct legal theory, the bare minimum legal research would have yielded that standard.   As such, petitioner established the first prong of the *Strickland* test.

### 2.   Counsel Failed to Investigate and Present Pertinent Evidence

Petitioner argues his counsel was further deficient in failing to investigate and present evidence at the suppression hearing that petitioner knew there was a warrant for his arrest prior to the interrogation, that petitioner knew the police had searched his house and handcuffed his family members, that petitioner's mother told him Detective Martinez said bad things would happen if he resisted arrest, that Detective Martinez confronted petitioner with evidence of guilt before questioning him, and that petitioner was a juvenile in his mother's custody during the interrogation.   Pet. Mem. at 13-15; Traverse at 6.   In her declaration, Burns stated she had spoken to petitioner and his mother Melendez numerous times before the hearing and they told her "about the arrest warrant" and that petitioner "fully expected to be booked after the interview."   Pet. Mem., Ex. F.   Burns declared she did not recall whether Melendez told her she informed petitioner there was a warrant for his arrest prior to going to the police station.   *Id*.

"[C]ounsel has a duty to make reasonable investigations" and "a particular decision not to investigate must be directly assessed for reasonableness."   *Strickland*, 466 U.S. at 691.   In order to prevail on an ineffective assistance claim based on the failure to investigate or call potential witnesses, petitioner must show

18

that the witnesses were willing to testify (*U.S. v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1988)), identify what the testimony would have been (*Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001)), and show that the testimony would have created reasonable doubt as to guilt.  *Tinsley v. Borg*, 895 F.2d 520, 532 (9th Cir. 1990); *see also Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000) (requiring that petitioner provide evidence, such as through a witness affidavit, as to the potential witness's testimony).

Petitioner established that Burns' performance was again unreasonable under the first prong.  Although Burns interviewed both petitioner and Melendez several times, Burns declared she did not recall whether Melendez told her that petitioner knew about the arrest warrant, and that her decision not to call petitioner and Melendez was strategic.  Pet. Mem., Ex. F.  Normally, this would be sufficient because counsel is given wide latitude in making tactical decisions.  *Strickland*, 466 U.S. at 689.  The problem here is that Burns proceeded under the incorrect legal theory.  Under the incorrect legal theory, choosing not to call petitioner or Melendez as witnesses would have been a reasonable strategic decision.  Under the correct legal theory, however, it was unreasonable for Burns not to investigate and present evidence that would support the objective inquiry.  Even assuming Burns did not know that petitioner knew about the arrest warrant and Detective Martinez's comments prior to going to the police station, Burns knew that petitioner was a juvenile, that Detective Martinez confronted petitioner with evidence that he was present and Jesse Silva said he was the shooter, and that petitioner expected to be booked after the interview, all of which were factors relevant to or supporting an "in custody" finding.  Pet. Mem., Ex. F.  But Burns did not present or argue this evidence at the hearing because she unreasonably proceeded under the incorrect legal theory.  Although understandable in light of her legal error, it was also unreasonable for Burns to not present evidence supporting the correct legal theory.

### 3.    Petitioner Was Prejudiced by Counsel's Deficient Performance

Petitioner has shown his trial counsel performed below an objective standard of reasonableness at the suppression hearing; however, there is a second step to show ineffective assistance of counsel, namely, that petitioner was prejudiced by counsel's deficient performance.

As discussed above, under the totality of the circumstances, a reasonable seventeen-year-old in petitioner's position, would not have felt he was able to terminate the interview.  Petitioner was therefore in custody during the police interview and the police violated his *Miranda* rights.  Had Burns argued the correct legal theory and presented all the evidence petitioner now argues she should have, the trial court likely would have found petitioner was in custody during the police interview and excluded petitioner's statements, just as the District Court here concluded on de novo review.  Without petitioner's statements in evidence at trial, there is a reasonable probability the jury would have reached a different conclusion because the only evidence connecting petitioner to the shooting was Leiva's uncorroborated testimony.  *See Jackson*, 364 F.3d at 1010-11 (because there was no evidence to corroborate testimony that defendant was at the crime, the admission of the illegally obtained confession was not harmless error).

In sum, petitioner was prejudiced by counsel's unreasonable decision to argue an incorrect legal theory and her consequent failure to marshal evidence pertinent to the correct legal theory.  Because petitioner can demonstrate both *Strickland* prongs, the state courts' rejection of petitioner's ineffective assistance claim was unreasonable.  Petitioner is therefore also entitled to habeas relief on Ground Two.

# VI.

# **RECOMMENDATION**

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) approving and accepting this Second Report and Recommendation; (2) directing that Judgment be entered granting the Petition; and (3) directing respondent to release petitioner from custody unless the State of California elects to retry petitioner within 90 days of the entry of Judgment.

DATED:  May 17, 2019

_____
SHERI PYM
United States Magistrate Judge

21